UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60968-CIV-COHN/STRAUSS

JENNIFER YOUNG, as the Administratrix
and personal representative of the estate
of JERMAINE McBEAN,

     Plaintiff,

v.

PETER PERAZA, et al.,

     Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss Third Amended

Complaint [DE 135] ("Motion") submitted by Defendants Gregory Tony in his official

capacity as Sheriff of Broward County, Florida; Officer Brad Ostroff, individually; and

Officer Richard Lacerra, individually (collectively, "Defendants").[1]  The Court has

considered the Motion, Plaintiff's Response [DE 137], Defendants' Reply [DE 140], and

the record in this case and is otherwise advised in the premises.  For the reasons

discussed herein, the Court will grant the Motion in part.

## I.    BACKGROUND

This case arises from the death of Jermaine McBean on July 31, 2013.  Plaintiff

recounts the events of that day as follows:

Mr. McBean purchased an air rifle at a pawn shop and carried it on foot to his

nearby home while listening to music through earbuds.  DE 133 at 8.  Officers Peraza,

_____

[1] Officer Peter Peraza, though a named Defendant in this action, is not a party to this Motion.

Ostroff, and Lacerra, also on foot, followed Mr. McBean for an unspecified distance until

he had entered his apartment complex.  Id. at 11.  As Mr. McBean walked, still outside,

toward his apartment, the officers called to him to drop his weapon.  Id. at 13.  Mr.

McBean, holding the air rifle slung across his shoulders with both arms draped over it,

could not hear the officers' command over his music, but sensed some commotion

behind him and stopped to turn around.  Id. at 11, 13.  As he was turning, Officer

Peraza shot him.  Id. at 14-15.

A registered nurse who happened to see the incident presented herself to the

officers and offered to provide medical assistance to Mr. McBean, who was still alive,

but the officers refused.  Id. at 18-19.  Mr. McBean died of his injuries.  Id. at 20.

The Broward Sherriff's Office ("BSO") investigated the shooting, but Plaintiff

alleges that the investigation amounted to a conspiracy to obfuscate the officers'

misdeeds by, among other things, giving false reports of the events leading up to the

shooting and ordering an autopsy upon Mr. McBean without notifying his family or

seeking their permission.  Id. at 21, 34.  Sheriff Israel also gave Officers Peraza, Ostroff,

and Lacerra awards for their conduct during the incident.  Id. at 35.

Plaintiff initiated this action on May 11, 2015.  DE 1.  She amended her

Complaint for the first time on August 4, 2015.  DE 31.  Defendants filed a motion to

dismiss only one claim in the First Amended Complaint, which the Court granted.  DE

37, 45.  Plaintiff, with the Court's leave, then filed a Second Amended Complaint

("SAC") on January 13, 2016.  DE 57.  The matter was stayed for approximately three

years pending the resolution of a parallel criminal action.[2]  DE 58.  On March 6, 2019,

---

[2] The criminal proceeding ended on December 13, 2018, when the Florida Supreme Court affirmed the
lower court's finding that Florida statutes 776.012(1) and 776.032(1), commonly known as the Stand Your

shortly after the stay was lifted, Defendants filed another motion to dismiss, this time relating to the entire SAC.  DE 95.  The Court struck that motion, agreeing with Plaintiff that Defendants could not raise arguments in a successive motion to dismiss that had been available to them in their previous motion to dismiss.  DE 110.  Federal Rule of Civil Procedure 12(c), however, permits a party to file a motion for judgment on the pleadings despite having already submitted a motion to dismiss, and so the Defendants refashioned the stricken motion to dismiss into a Rule 12(c) motion, arguing that the SAC was a shotgun pleading and failed to state a claim upon which relief could be granted.  The Court agreed with Defendants and issued an order carefully listing all the deficiencies in the SAC and granting Plaintiff leave to amend it ("12(c) Order").  DE 129.  Plaintiff filed her Third Amended Complaint ("TAC") on February 18, 2020.  DE 133.  Defendants now seek to dismiss all the claims in the TAC asserted against them.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move a court to dismiss all or part of a complaint for failure to state a claim upon which relief may be granted.  When reviewing a motion to dismiss, "[a]ll of the factual allegations in the complaint must be accepted and construed in the light most favorable to the plaintiff."  Young Apartments, Inc. v. Town of Jupiter, FL, 529 F.3d 1027, 1037 (11th Cir. 2008).  Courts need not, however, accept mere legal conclusions.  Pouyeh v. Bascom Palmer Eye Inst., 613 F. App'x 802, 808 (11th Cir. 2015).  To survive a motion to dismiss, a complaint must therefore contain "sufficient factual matter, accepted as true, to 'state a

---

Ground Law, applied to law enforcement officers, and that Defendant Peraza was immune from criminal prosecution in Florida's courts based on his invocation of the Stand Your Ground Law. State v. Peraza, 259 So. 3d 728, 733 (Fla. 2018).

3

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  That is to say, the

alleged facts must "raise a right to relief above the speculative level."  Twombly, 550

U.S. at 555.

III.   **DISCUSSION**

Plaintiff asserts that three constitutional violations occurred in connection with Mr.

McBean's death: an unlawful use of deadly force against Mr. McBean, deliberate

indifference to Mr. McBean's serious medical needs, and a conspiracy to deprive Mr.

McBean of his constitutional rights.  Based on these alleged violations, Plaintiff asserts

the following claims in the TAC:

- Count I: Unlawful Use of Deadly Force (under 42 U.S.C. § 1983) against
  Officer Peraza

- Count II: Unlawful Use of Deadly Force: Failure to Intervene (under 42 U.S.C.
  § 1983) against Officers Lacerra and Ostroff

- Count III: Unlawful Use of Deadly Force: Supervisory Liability (under 42
  U.S.C. § 1983) against Officers Lacerra and Ostroff

- Count IV: Unlawful Use of Deadly Force: Monell Liability (under 42 U.S.C. §
  1983) against Sheriff Tony[3]

- Count V: Failure to Train: Monell liability (under 42 U.S.C. § 1983) against
  Sheriff Tony

---

[3] All claims asserted against Sheriff Tony in his official capacity are interpreted as claims against the
BSO.  See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).

- Count VI: Deliberate Indifference to Serious Medical Needs (under 42 U.S.C. § 1983) against Officers Peraza, Lacerra, and Ostroff

- Count VII: Deliberate Indifference to Serious Medical Needs: Supervisory Liability (under 42 U.S.C. § 1983) against Officers Lacerra and Ostroff

- Count VIII: Deliberate Indifference to Serious Medical Needs: <u>Monell</u> Liability (under 42 U.S.C. § 1983) against Sheriff Tony

- Count IX: Conspiracy (under 42 U.S.C. § 1983) against Officers Peraza, Lacerra, and Ostroff

- Count X: Conspiracy (under 42 U.S.C. § 1985) against Officers Peraza, Lacerra, and Ostroff

- Count XI: Wrongful Death (under Florida law) against Officer Peraza

- Count XII: Wrongful Death: *Respondeat Superior* Liability (under Florida law) against Sheriff Tony

- Count XIII: Civil Conspiracy (under Florida law) against Officers Peraza, Lacerra, and Ostroff

DE 133 at 46-64.  Defendants argue that all the Counts asserted against them[4] must be dismissed.  Specifically, they argue that (1) Officers Lacerra and Ostroff are entitled to qualified immunity with respect to all Counts asserted against them, (2) Plaintiff has failed to assert facts sufficient to support her claims of deliberate indifference to serious medical needs or supervisory liability, (3) Plaintiff's conspiracy claims are improperly

---

[4] Counts I and XI are asserted only against Officer Peraza, who is not a party to the Motion, and thus Defendants do not argue that these Counts must be dismissed.  The following analysis deals only with Counts II-X and XII-XIII.

pled and barred by the intracorporate conspiracy doctrine, and (4) Plaintiff has not properly alleged that the BSO had a custom or policy of violating constitutional rights, as is necessary to state her claims against BSO.

Plaintiff makes the preliminary counterargument that the Motion must be stricken under Rule 12(g)(2), which precludes a party from submitting a successive motion to dismiss which "rais[es] a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. Proc. 12(g)(2). She states that the TAC is substantively the same as her original Complaint, and thus Defendants have forfeited all the arguments they make in the Motion by not presenting them earlier. She does go on, however, to address the substantive arguments in the Motion anyway, surmising that even if the Motion is stricken, Defendants will simply refashion it into another motion for judgment on the pleadings pursuant to Rule 12(c). Substantively, Plaintiff responds that (1) she has alleged facts sufficient to deny Defendants qualified immunity, (2) her recount of the Officers' conduct at the scene of the shooting sufficiently plead deliberate indifference to serious medical needs and supervisory liability, (3) the intracorporate conspiracy doctrine does not apply to conspiracies alleged under Florida law or in civil rights actions, and (4) Plaintiff has sufficiently supported her Monell claims by asserting that there was a custom at the BSO of violating constitutional rights and that Officers Lacerra and Ostroff, as policy-makers, ratified violative conduct at the scene of the shooting.

The Court disagrees with Plaintiff's procedural argument. While portions of the TAC are largely the same as the original Complaint, the TAC is different in one significant respect: each Count now includes only one cause of action and clearly

indicates against whom each cause of action is asserted.  In the 12(c) Order, the Court found that the SAC was a shotgun pleading and therefore failed to effectively communicate the specific claims that were asserted against each specific Defendant. Plaintiff has corrected this deficiency in the TAC, and this clarity allows Defendants to make targeted arguments for dismissal instead of general arguments or arguments based on assumptions.  The defenses they raise in the Motion were therefore not available to them when they filed their first motion to dismiss and thus are properly brought here.

### A.  Unlawful Use of Deadly Force: Counts II, III, IV, and V

Plaintiff asserts that the shooting of Mr. McBean constituted an unlawful use of deadly force and asserts that the BSO, Officer Lacerra, and Officer Ostroff are all responsible for this constitutional violation.  She asserts that the BSO proximately caused the violation by (1) failing to train its officers in the lawful use of deadly force and the appropriate way to respond to individuals who cannot hear officers' commands, and (2) failing to thoroughly investigate its deputies' use of deadly force against civilians. She also asserts that Officers Lacerra and Ostroff are personally liable for failing to intervene and in their supervisory capacities.  Defendants argue that the Officers are entitled to qualified immunity on the personal liability claims because (1) they had arguable probable cause to stop Mr. McBean and (2) their personal conduct did not violate any of his constitutional rights.  In addition, they argue that without an underlying constitutional violation, Plaintiff's municipal liability claims must also fail, and even if there were a constitutional violation, Plaintiff has not shown that it was the result of a BSO custom or policy.

### i. *Personal Liability Claims: Counts II and III*

Defendants argue that Counts II and III should be dismissed because Officers Lacerra and Ostroff are qualifiedly immune.  Qualified immunity is a defense government officials, but not municipalities, may use to shield themselves from litigation arising from actions they take in the course of executing their official discretionary functions.  "[G]overnment officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quoting GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir.1998) (internal quotation marks omitted)).  In determining whether qualified immunity is applicable, a court must determine whether a constitutional violation has occurred and whether the right violated was clearly established at the time of the violation.  Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Court may take the inquiry in either order.  Id. at 236.

Plaintiff does not dispute that the officers were operating within their discretionary authority.  The question, then, is whether the Officers' personal conduct violated a clearly established constitutional violation.

#### 1. *Failure to Intervene: Count II*

In Count II, Plaintiff seeks to hold Officers Lacerra and Ostroff responsible for Mr. McBean's shooting because they failed to intervene when Officer Peraza allegedly used unlawful deadly force against him.  Defendants argue that they are entitled to qualified immunity because they had at least arguable probable cause to stop Mr. McBean and therefore no constitutional violation occurred.  Plaintiff responds, with no supporting

case law, that the question is not whether Defendants had arguable probable cause but whether it was lawful to fatally shoot Mr. McBean.  She then goes on to describe a number of facts alleged in the TAC which she asserts show that the shooting was not lawful.

It is not clear how Plaintiff's response resolves the question of whether Officers Lacerra and Ostroff are entitled to qualified immunity.  Whether it was lawful to exert deadly force against Mr. McBean is simply another way of asking whether a constitutional violation occurred, and whether the Officers had arguable probable cause to stop Mr. McBean is relevant to that inquiry.  The Court therefore interprets Plaintiff's argument to be that the Officers did not have arguable probable cause and therefore a constitutional violation did occur.

Even assuming that Plaintiff is correct and the use of deadly force against Mr. McBean was unlawful, however, Officers Lacerra and Ostroff are entitled to qualified immunity because Plaintiff has not described their personal conduct such that they may be held personally liable for it.  Liability for failure to intervene only attaches where an officer is in a position to intervene at the time of the violation.  Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000).  The duration of the violation is relevant to the determination of whether someone was in a position to intervene such that liability may attach.  See, e.g., Marantes v. Miami-Dade Cty., 649 F. App'x 665, 672 (11th Cir. 2016) (finding no failure to intervene where plaintiff was kicked "four times in rapid succession without warning").  Plaintiff's recount of the facts indicates that Officer Peraza shot Mr. McBean three times in quick succession, just as Mr. McBean was turning around.  The Court has not found, and the Plaintiff has not provided, any case

law holding law enforcement officers were liable for a failure to intervene under circumstances where a constitutional violation lasted only seconds.  The Officers are therefore entitled to qualified immunity on the failure to intervene claim.  See Militello v. Sheriff of Broward Sheriff's Office, 684 F. App'x 809, 815 (11th Cir. 2017) (finding that defendant officers were entitled to qualified immunity where plaintiff could not produce any precedent which would have put the officers on notice that they were required to intervene when plaintiff was beaten during booking).  Count II must therefore be dismissed.

### ii.  *Supervisory Liability: Count III*

Plaintiff also asserts that Officers Lacerra and Ostroff can be held personally responsible for Mr. McBean's shooting under a theory of supervisory liability. Defendants argue that Plaintiff has not pled facts sufficient to show that the Officers' personal conduct as supervisors caused the shooting.  Plaintiff disagrees and points out that in the TAC she asserts that the Officers failed to develop an appropriate plan of action for stopping Mr. McBean and did not properly prepare the less-experienced Officer Peraza for the encounter.

Supervisors are not liable under § 1983 on the basis of *respondeat superior*. Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008).  Rather, in order to succeed on a supervisory liability claim, "a plaintiff must show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."  Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014).  This causal connection can be established in several ways: (1) if "a history of widespread abuse puts the responsible supervisor on notice of

the need to correct the alleged deprivation, and he fails to do so," (2) when a supervisor's custom or policy causes "deliberate indifference to constitutional rights," or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. at 1298.

Plaintiff has not pled facts sufficient to show a causal connection in any of these ways, and therefore, again assuming that Mr. McBean was shot unlawfully, the Officers cannot be held personally responsible for that violation.  There is no allegation that either Officer Lacerra or Officer Ostroff themselves shot Mr. McBean.  Nor is there any allegation that Officer Lacerra or Officer Ostroff either directed Officer Peraza to shoot Mr. McBean or knew that he would do so.  And Plaintiff does not argue that historical abuses put the Officers on notice that they needed to take any corrective measures. Rather, Plaintiff appears to argue, again without supporting case law, that supervisory liability attaches because the supervising Officers' response to the situation with Mr. McBean constitutes a policy which caused Officer Peraza's deliberate indifference to Mr. McBean's constitutional rights.  But the existence of a supervisor's policy or custom requires "point[ing] to multiple incidents or multiple reports of prior misconduct by a particular employee." Henley v. Payne, 945 F.3d 1320, 1331 (11th Cir. 2019) (quoting Piazza v. Jefferson County, 923 F.3d 947, 957 (11th Cir. 2019) (internal quotation marks omitted) (alteration in original).  Here, Plaintiff has not alleged that Officer Peraza had engaged in similar, violative conduct previously.  Instead, she relies on the single incident of Mr. McBean's shooting, which is insufficient to hold Officers Lacerra and Ostroff liable for Mr. McBean's death.   This Count must therefore also be dismissed.

### iii. *Monell Claims: Counts IV and V*

In Counts IV and V, Plaintiff claims that the BSO is responsible for the allegedly unlawful use of deadly force against Mr. McBean.  Count IV asserts that the BSO has a custom of using deadly force unlawfully, which led to the unlawful use of deadly force against Mr. McBean.  Count V alleges that the BSO has a custom of failing to properly train its deputies in the lawful use of deadly force and the appropriate response to persons who cannot hear police instructions.  Defendants argue that Plaintiff has failed to assert facts sufficient to show either custom.  Plaintiff counters that the custom or policy is adequately alleged through (1) the assertion that Officers Lacerra and Ostroff were BSO policy-makers and that their "acts and omissions concerning the plan for addressing the situation" with Mr. McBean were functions of their policy-making role, (2) the BSO's history of fatally shooting civilians, and (3) the awards given to the Officers for their role in the shooting incident.

A municipality may be sued for damages where a municipal custom or policy was the moving force behind a violation of federal rights.  Monell v. Dept. of Soc. Svcs. Of the City of New York, 436 U.S. 658, 690 (1978).  To state a Monell claim under § 1983, a plaintiff must show (i) a constitutional violation, (ii) a municipal custom or policy, and (iii) a causal link between the two.  See Johnson v. Darnell, 781 F. App'x 961, 964 (11th Cir. 2019).  A custom or policy may be shown by an officially promulgated county policy, see Knight v. Miami-Dade Cty., No. 09-23462-CIV, 2012 WL 12845657, at *8 (S.D. Fla. Aug. 6, 2012), but is generally established by showing "a persistent and wide-spread practice," Depew v. City of St. Marys, Ga., 787 F.2d 1496, 1s499 (11th Cir. 1986).  A custom or policy may also be established by showing that a municipal official with

policymaking authority has ratified a subordinate's violative actions. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").  A persistent failure to properly train law enforcement officers may constitute a custom under § 1983.  See, e.g., Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) ("A municipality's failure to correct the constitutionally offensive actions of [a] police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct.").

### 1.  *Unlawful Use of Deadly Force*

Even assuming that a constitutional violation did occur, none of the facts Plaintiff asserts sufficiently allege a custom or policy.  Plaintiff does not clearly state how her assertion that Officers Ostroff and Lacerra failed to devise an appropriate plan for stopping Mr. McBean could show a policy or custom, but because Plaintiff has produced no authority indicating that an individualized response plan qualifies as an officially-promulgated policy, the Court interprets her argument as one proceeding under a ratification theory of liability.  "[W]hen plaintiffs are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis before a court can hold the government liable on a ratification theory."  Salvato v. Miley, 790 F.3d 1286, 1296 (11th Cir. 2015) (quoting Thomas ex rel. Thomas v. Roberts, 261 F.3d 1160, 1174 n. 12 (11th Cir.2001)) (alteration in original).  Such review must occur before the actions become

final.  See Thomas ex rel. Thomas v. Roberts, 261 F.3d 1160, 1174 (11th Cir. 2001),

cert. granted, judgment vacated sub nom. Thomas v. Roberts, 536 U.S. 953 (2002),

opinion reinstated, 323 F.3d 950 (11th Cir.2003) ("[A] local government may be held

liable for a constitutional tort when policymakers have had the opportunity to review

subordinates' decisions before they become final.").  Here, in order for this single

incident to amount to a custom or policy sufficient to sustain a Monell claim, Plaintiff

must have alleged that Offiver Peraza revealed a plan to shoot Mr. McBean and

Officers Lacerra and Ostroff had approved it.  Plaintiff has asserted no such facts,

however, and so the shooting incident itself cannot show a custom or policy sufficient to

sustain her Monell claims.

The single occasion of granting awards to the Officers also does not show a BSO

custom or policy for purposes of Plaintiff's Monell claims.  Not only did the awards long

postdate the shooting itself, but in Thompson v. Sheriff, Pinellas Cty. FL, 542 F. App'x

826, 830 (11th Cir. 2013), the Eleventh Circuit summarily rejected the proposition that a

post-incident nomination for an award could constitute ratification.  The awards

therefore cannot sustain the Monell claims.

Plaintiff does include in the TAC, like the SAC before it, a summary of the

criminal conduct of BSO deputies in the years before Mr. McBean's death.  This

summary includes the allegation that in 2013, sixteen BSO deputies were subject to

grand jury investigations in relation to civilian deaths.  One deputy was even allegedly

subject to two investigations simultaneously, having killed a second civilian after being

returned to duty before the investigation into the first killing had opened.  As the Court

noted in the 12(c) Order, however, this summary does not indicate that any of these

investigations returned indictments. The fact that sixteen BSO deputies killed civilians over the course of a year does not show that they did so unlawfully.  This data alone therefore also does not establish a history of abuse which might provide the basis for a <u>Monell</u> claim.  Plaintiff has therefore not shown a custom or policy of unlawful use of deadly force by BSO deputies and Count IV must be dismissed.

### 2. *Failure to Train*

Regarding Count V, Plaintiff makes no factual assertions regarding what type of training the BSO regularly provides its deputies with respect to either the use of deadly force or the proper way to respond to persons who cannot hear police instructions. While she does state on several occasions that the BSO has failed to properly train its deputies, the only actual facts she asserts to support the claim are that (1) Officer Peraza admitted he had not received training in how to respond to individuals who could not hear instructions and (2) Officer Peraza was returned to active duty following the shooting incident without any "meaningful" additional training.  DE 133 at 41, 30.  As discussed above, however, a single incident is insufficient to show a custom or policy for the purposes of a <u>Monell</u> claim.  Even assuming that Officer Peraza was insufficiently trained, this fact alone would not show that the BSO regularly fails to train its deputies.  She also concludes that "Lacerra and Ostroff clearly appear to not have had appropriate training in approaching situations such as that which unfolded here," DE 133 at 53, but she does not assert any facts about what training Officers Lacerra and Ostroff did or did not receive.  She seems to rely on the fact of the shooting itself to show their lack of training, but her claims cannot survive on conclusory statements alone.  Without properly asserted facts to support it, Count V must also be dismissed.

### B. Deliberate Indifference to Serious Medical Needs: Counts VI, VII, and VIII

In Counts VI and VII, Plaintiff charges Officers Lacerra and Ostroff with exhibiting deliberate indifference to Mr. McBean's serious medical needs as principal actors and as supervisors, respectively.  In Count VIII, she asserts a <u>Monell</u> claim on the same grounds.  Defendants argue that Plaintiff fails to assert facts sufficient to support these claims.  Specifically, they argue that the TAC does not state that Officer Ostroff had any part in declining to allow the bystander nurse to assist Mr. McBean, and the declination by Officer Lacerra does not show a deliberate indifference to a serious medical need.  Plaintiff counters that she has clearly stated that Officer Ostroff also declined the nurse's offer to help Mr. McBean and that the TAC avers that Defendants showed deliberate indifference to Mr. McBean's medical needs in several ways, not only by refusing the help of the bystander.

With respect to the former argument, the Court finds that Plaintiff has adequately implicated Officer Ostroff in the encounter with the nurse.  Although the facts section of the TAC does not indicate that Officer Ostroff had any interaction with the nurse, in the Counts themselves both note that "Peraza, Lacerra, and Ostroff refused to let the trauma nurse provide any medical assistance to [Mr. McBean]."  DE 133 at 54, 56.  She has implicated him in both claims.

Plaintiff has still failed to properly state her cause of action, however, no matter against whom she asserts it. To show deliberate indifference to a serious medical need in contravention of the Fourteenth Amendment, Plaintiff must show (i) a serious medical need, (ii) deliberate indifference to that need, and (iii) causation between that

indifference and the injury.  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).  Deliberate indifference in this context means (i) subjective knowledge of a risk of serious harm and (ii) disregard of that risk by conduct that is more than mere negligence.  Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).  In the 12(c) Order, the Court found that Mr. McBean was obviously experiencing a serious medical need, but that Plaintiff had failed to show deliberate indifference to that need.  The 12(c) Order noted that the SAC did not allege, for example, that Defendants delayed calling EMS or prevented EMS from providing treatment.  Plaintiff includes no such additional facts in the TAC, though.  All she has added is that the bystander who offered help was in her nurse's uniform when she presented herself to the Officers.  This is simply insufficient to correct the infirmity the 12(c) Order clearly described.  While she does conclude that the Officers "deliberately delayed in getting [Mr. McBean] medical aid . . . in the hope that he would die," she has alleged no facts to support the conclusion.  A fair reading of the TAC discerns only the following relevant facts: (1) that Mr. McBean was shot, (2) that the Officers did not allow a bystander to perform CPR on him, (3) that EMS arrived and attended to him, and (4) that he succumbed to his injuries at an unspecified later point in time.  These few facts do not describe disregard of Mr. McBean's medical risks by conduct that exceeds mere negligence.  She therefore has not shown a constitutional violation which could form the basis for Counts VI, VII, and VIII, and these claims must be dismissed.

### C.  Conspiracy: Counts IX, X, and XIII

In the TAC, Plaintiff asserts three claims against Officers Lacerra, Ostroff, and Peraza for conspiring to violate Mr. McBean's rights: Count IX asserts a claim under 42

U.S.C. § 1983; Count X asserts a claim under 42 U.S.C. § 1985; and Count XIII asserts a claim under Florida law.  Defendants argue that Plaintiff has failed to correct the deficiencies the Court pointed out to her in the 12(c) Order.  Specifically, they argue that she has failed to clearly describe the contours of the conspiracy, and even if she had, her claims cannot survive the intracorporate conspiracy doctrine.  In addition, they resurrect an argument the Court rejected in the 12(c) Order: that the conspiracy charges must be dismissed to the extent they rely upon the officers' testimony given during judicial proceedings.  Plaintiff responds that (1) the claims do not rely upon testimony given during judicial proceedings, (2) the claims are exempt from the intracorporate conspiracy doctrine, and (3) the allegations are "more than abundantly clear" as to what exactly the Officers are accused of conspiring to do.

With respect to the immunity argument, the Court still agrees with Plaintiff that absolute immunity is inapplicable here.  As stated in the 12(c) Order, Plaintiff relies upon sworn statements given in the course of her own and the BSO's investigation of the incident.  And since Defendants have still not provided any additional authority indicating that statements given during such investigations enjoy the same immunity as statements given during judicial proceedings, the Court will not alter its position on this point.

The Court agrees with Defendants on its other two arguments, however.  In the 12(c) Order, this Court noted that Plaintiff's conspiracy charges, as she stated them in the SAC, were deficient for several reasons: first, it was not clear from the SAC which of Mr. McBean's rights Defendants were alleged to have conspired to violate; second, while Plaintiff had stated facts sufficient to show that a conspiracy existed, she had not

shown how the conspiracy had led to the violation of any constitutional right; and third, she had not stated facts sufficient to overcome the intracorporate conspiracy doctrine. All three of these deficiencies remain in the TAC.

The TAC, like the SAC before it, asserts that Defendants conspired to deprive Mr. McBean of his rights, without specification, under the Fourth, Fifth, and Fourteenth Amendments and the Privileges and Immunities Clause of the United States Constitution.  But there are several rights guaranteed to individuals in each of those sections of the Constitution, and while the context of this case may be sufficient to indicate that the Fourth and Fourteenth Amendment right at issue is the right to be free of unlawful seizures, ambiguity remains.  The Court strains to imagine, for example, what specific right under the Privileges and Immunities Clause of Article IV is possibly implicated in this matter.  That clause prohibits any state from denying citizens of another state any of the privileges or immunities it offers its own citizens.  Every iteration of the Complaint, however, has stated that Mr. McBean is a resident of Broward County, Florida.  It is therefore not clear how the Privilege and Immunities Clause applies.

In her Response, Plaintiff implies by comparison to the plaintiff in Battiste v. Jenne, 2006 WL3665420 (S.D. Fla., November 15, 2006), that she intends to allege "a civil rights conspiracy among BSO employees to deprive the Plaintiff of the constitutional right to be free from unlawful seizure of their persons by law enforcement officer, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution."  DE 137 at 18.  However, as previously discussed in the 12(c) Order, the only conspiracy clearly described in the TAC, like the SAC before it, is the alleged

cover-up that took place **after** Mr. McBean's death.  While the TAC's description of the alleged cover-up is extensive, it still fails to connect the conspiracy with the deprivation of a federally-guaranteed right.  Even assuming that an unlawful seizure did occur when Officer Peraza shot Mr. McBean, there are no facts in the TAC indicating that any conspiracy occurred **before** Mr. McBean's death, and there are no facts in the TAC indicating that the alleged cover-up was intended to deprive him of any other constitutional rights.

In addition, these Counts still cannot survive the intracorporate conspiracy doctrine.  "[U]nder the [intracorporate conspiracy] doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."  McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).  The 12(c) Order pointed out that Plaintiff's own recount of events in the SAC only listed BSO employees as potential co-conspirators, and the TAC continues to assert only that Defendants "and other BSO employees" participated in the cover-up conspiracy.  This deficiency therefore remains uncorrected.

Plaintiff argues that the doctrine does not apply to Counts IX, X, and XIII, but the Court is not persuaded.  Although Plaintiff notes that the Supreme Court has not approved the application of the doctrine in civil rights cases, the case she cites for this proposition clearly goes on to state that "[n]othing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation."  Ziglar v. Abbasi, 137 S. Ct. 1843, 1868 (2017).  And Plaintiff even concedes that the Eleventh Circuit recognizes the application

of the doctrine in civil rights actions.  See, e.g., Dickerson v. Alachua Cty. Com'n, 200 F.3d 761 (11th Cir. 2000).  Similarly, while she correctly points out that Defendants failed to show that the doctrine applied under Florida law, Florida courts have also recognized the applicability of the doctrine under state law.  See, e.g., Cedar Hills Props. Corp. v. E. Fed. Corp., 575 So.2d 673, 676 (Fla. 1st DCA 1991) ("Since a corporation is a legal entity which can only act through its agents, officers and employees, a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest.").  The doctrine therefore clearly applies to the instant matter.

Plaintiff next argues, however, that the doctrine does not apply where, as here, a civil complaint alleges a criminal conspiracy, see Battiste, 2006 WL 3665420, at *1. She does not indicate under what statute the alleged conspiracy is criminal, though the Court notes that 18 U.S.C. § 282 makes it a crime for anyone acting under color of law to willfully deprive anyone of federally-guaranteed rights, which bears a strong resemblance to the civil rights claims Plaintiff makes.  However, as discussed above, the only conspiracy described in the TAC is not clearly related to any subsequent deprivation of a federally-guaranteed right.  Without any indication of how the cover-up deprived Mr. McBean of any constitutional right, there is no actionable criminal activity. For all these reasons, Counts IX, X, and XIII must therefore be dismissed.

### D.  Respondeat Superior: Count XII

Finally, Plaintiff asserts a claim against Sheriff Tony for wrongful death under a *respondeat superior* theory of liability.  Defendants conclude in the introduction to the Motion that Sheriff Tony is entitled to sovereign immunity on this claim, but there is no

further develop of the argument in the subsequent memorandum of law.  Plaintiff

responds with similar brevity that "Defendants are just plain wrong. Section 768.28(9)(a)

expressly provides for such a claim to be brought against the entity (here the Sheriff's

office - through Sheriff Tony in his official capacity), exactly as it is alleged."  DE 137 at

21.

Defendants make no argument and present no precedential authority to indicate

that sovereign immunity applies in this case.  The Court notes, however, that Florida

waives sovereign immunity for some tort cases.  Specifically, Florida's waiver statute

states that

> [t]he state or its subdivisions shall not be liable in tort for the acts or
> omissions of an officer, employee, or agent . . . committed in bad faith or
> with malicious purpose or in a manner exhibiting wanton and willful
> disregard of human rights, safety, or property.

Fla. Stat. Ann. § 768.28 (West).  Thus, if the actions alleged "can occur only from bad

faith or malicious or wanton and willful conduct, then the claim against the government

entity fails on sovereign immunity grounds." N.R. by Ragan v. Sch. Bd. of Okaloosa

Cty., Fla., 418 F. Supp. 3d 957, 998 (N.D. Fla. 2019) (quoting Gregory v. Miami-Dade

Cty., Fla., 719 F. App'x 859, 873 (11th Cir. 2017)) (internal quotation mark omitted).  It is

not clear from Plaintiff's asserted facts, however, that Officer Peraza's actions could

only have occurred with bad faith or malice.  The Court therefore disagrees with

Defendants' conclusion that sovereign immunity bars the claim.

### E.  Leave to Amend

Defendants ask that all dismissed Counts be dismissed with prejudice.  Plaintiff

does not respond to this request and does not ask for leave to amend the pleading a

fourth time.  Under Federal Rule of Civil Procedure 15(a)(2), plaintiffs should be freely

given leave to amend a complaint "when justice so requires."  Courts may deny

permission to amend a pleading, however, where a party fails to cure deficiencies by

amendments previously allowed.  Espey v. Wainwright, 734 F.2d 748, 750 (11th Cir.

1984).  Here, Plaintiff has already amended her complaint three times and the TAC fails

to correct all the deficiencies that the 12(c) Order very clearly listed.  In addition, the

Eleventh Circuit has "never required district courts to grant counseled plaintiffs more

than one opportunity to amend a deficient complaint."  Eiber Radiology, Inc. v. Toshiba

Am. Med. Sys., Inc., 673 Fed. Appx. 925, 930 (11th Cir. 2016).  To the contrary, the

Eleventh Circuit has upheld the denial of leave to amend where, as here, a plaintiff has

not formally moved for leave to amend under Rule 15.  Id. (affirming district court's

dismissal of plaintiff's amended complaint with prejudice after "noting that Plaintiff never

squarely pursued its right to seek leave to amend under Rule 15(a)(2) when Defendant

again moved to dismiss, nor did it explain to the district court below why justice might

require a second opportunity to amend.").  Finally, it is worth noting that this case has

been pending for approximately five years and is scheduled to begin trial in seven

months.  Under these circumstances, the Court finds that "[p]ermitting another round of

amendments would . . . unduly protract[] the proceeding . . . and promote[] judicial

inefficiency."  Id.  Defendants' request is therefore granted.

## IV.   CONCLUSION

Based on the foregoing, it is accordingly **ORDERED AND ADJUDGED** as

follows:

1. Defendants' Motion to Dismiss Third Amended Complaint [DE 135] is

   **GRANTED in part**.

2. Counts II, III, IV, V, VI, VII, VIII, IX, X, and XIII are **DISMISSED with**

**prejudice**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 17th day of April, 2020.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF