IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CIV-60968-COHN/SELTZER

JENNIFER YOUNG, as the Administratix
and personal representative of the estate of
JERMAINE MCBEAN,

       *Plaintiff,*

v.

PETER PERAZA, et. al.,

       *Defendants.*

_____/

## DEFENDANT, PETER PERAZA'S, MOTION FOR FINAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW the Defendant, PETER PERAZA (Peraza), by and through his undersigned attorneys, and pursuant to Fed. R. Civ. P. 56(b) and this Court's Local Rule 56.1, moves for the entry of an Order granting final summary judgment in his favor, and as grounds states:

### Background and introduction

Plaintiff filed this action against multiple defendants, including Peraza, arising out of the shooting of Jermaine McBean on July 31, 2013.   See (DE 133).   Peraza is a Broward Sheriff's Office (BSO) deputy.   (DE 133), ¶ 4.   After the Court dismissed various claims and parties, see (DE 143), the only remaining claims against Peraza are Plaintiff's claims alleging "unlawful use of deadly force under 42 U.S.C. § 1983" (Count I) and a battery resulting in "wrongful death (under Florida law)."   (DE 143, at p. 24); see (DE 133, counts I and XI).

In this motion and memorandum, Peraza cites to his concurrently-filed Statement of Undisputed Material Facts in support of this motion thusly:

Facts at (paragraph number).

Additionally, Peraza cites to his Appendix to this motion thusly:

App. (tab letter); (page or paragraph number), (line number, if applicable).

## Motion for final summary judgment

1.      Plaintiff has sued Peraza under 42 U.S.C. §1983 claiming "unlawful use of deadly force" and under Florida law for battery.   (DE 133, counts I and XI).

2.      The undisputed facts establish that Peraza's use of deadly force was objectively reasonable and not clearly excessive. Consequently, there is no viable underlying constitutional violation or common law battery.

3.      There is no genuine issue as to any material fact.   Deputy Peraza is entitled to judgment as a matter of law on Plaintiff's claims.

WHEREFORE, Defendant, Peter Peraza, respectfully requests that this Honorable Court enter an order granting summary judgment in his favor and enter final judgment accordingly.

## Undisputed Facts

McBean suffered from significant and serious mental health issues along the psychotic and mood spectrums. Facts at ¶ 1.  On July 25, 2013, one week before the incident date, McBean suffered a psychotic episode at his workplace and was involuntarily hospitalized under the Baker Act. Facts at ¶ 13.

On July 31, 2013, McBean went to Crown Pawn Shop looking to buy a shotgun. Facts at ¶ 17. After the store manager informed McBean they did not sell firearms, McBean then inquired about an air rifle hanging on the wall. Facts at ¶ 17. After purchasing the air rifle, the manager offered to hold on to the rifle and have McBean pick it up later, as the rifle looked real and openly walking with it along the highway would not be a good idea. Facts at ¶ 18. However, McBean wanted the rifle immediately, so the manager wrapped the rifle in two black garbage bags and told McBean to keep it in the bags. Facts at ¶ 18.

After leaving the store McBean headed north on foot on Dixie Highway. Facts at ¶ 20. At some point he decided to unwrap the weapon and carry it in a fashion that drew attention to himself. Facts at ¶ 20. Several concerned citizens called 911 to report an individual openly carrying what appeared to be a shotgun or rifle. Facts at ¶ 20. McBean's demeanor was observed as walking fast, mumbling or grunting to himself, looking distraught, stomping, in a state of uneasiness, and aggressive. Facts at ¶ 22.

Four BSO deputies were dispatched to the scene. Facts at ¶¶ 23-27. Dispatch informed the deputies to be on the lookout for a black male with a shaved head wearing a white shirt and blue jeans walking or marching northbound on Dixie Highway holding a rifle. Facts at ¶ 23. Peraza was one of the deputies to respond. Facts at ¶ 28. Upon arrival Peraza saw McBean walking with the rifle. Facts at ¶ 33. As Peraza drove past McBean in his marked police vehicle with emergency lights on and without sirens, McBean began to walk faster and changed positions of the rifle. Facts at ¶ 33. Peraza believed that McBean had seen him. Facts at ¶ 33. Peraza lost sight of McBean when Peraza went to block traffic

and feared that McBean was gaining a tactical advantage. <u>Facts</u> at ¶ 34.

The deputies responded to McBean's last known location, which was Greentree Apartments, a square residential apartment complex. <u>Facts</u> at ¶ 35. Greentree Apartments has a community pool located behind the rental center at the front of the complex. <u>Facts</u> at ¶ 35. Peraza and the other deputies pursued McBean on foot into the Greentree Apartments. <u>Facts</u> at ¶ 36. The deputies saw McBean holding what appeared to be a real rifle. <u>Facts</u> at ¶ 45. The deputies repeatedly yelled commands at McBean to "stop," "police," and "drop the weapon." <u>Facts</u> at ¶ 46. The commands were extremely loud, such that they could be heard bouncing off the buildings in the courtyard. <u>Facts</u> at ¶46.

McBean did not drop the weapon. <u>Facts</u> at ¶ 48. The level of perceived risk increased as McBean disregarded the deputies' clear loud verbal commands to stop and drop his weapon. <u>Facts</u> at ¶ 49. When Peraza and another deputy closed the gap to about 5 to 10 feet, McBean made an abrupt stop. <u>Facts</u> at ¶ 50. After McBean stopped, he began to move his rifle over the top of his head. <u>Facts</u> at ¶ 53. Deputies again immediately yelled "drop the rifle, don't turn around with the rifle, drop the rifle." <u>Facts</u> at ¶ 53. However, McBean continued to turn with the rifle while spinning his body. <u>Facts</u> at ¶ 53. The rifle turned toward the occupied pool area and continued to turn toward the deputies. <u>Facts</u> at ¶ 53. McBean then brought his weapon toward the deputies and assumed a firing stance. <u>Facts</u> at ¶ 54. Peraza fired his weapon when McBean pointed the rifle at him. <u>Facts</u> at ¶ 58. Peraza fired three shots, striking McBean twice. <u>Facts</u> at ¶ 58. The deputies transmitted over the radio that shots were fired and requested paramedics and a rescue team, but McBean died.

4

Facts at ¶62.

**Memorandum of Law**

A.  **No predicate Fourth Amendment violation – the use of deadly force was reasonable**

The Supreme Court recognizes that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386 (1989); *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002). Force is evaluated from a purely objective standpoint and, if objectively reasonable, comports with the Fourth Amendment. *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008).  The "calculus of reasonableness must embody allowance for the fact that police officers are often required to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving - about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.  It is important that a "reviewing court judge the use of force 'from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight,' and refrain from slipping into the role of a Monday-morning quarterback."  *Fernandez v. City of Cooper City*, 207 F.3d 1371, 1377 (S.D. Fla. 2002)(Middlebrooks, J.).

In the Eleventh Circuit, there are secondary factors to be evaluated in connection with assessing objective reasonableness: (1) the need for the application of force; (2) the relationship between the need and amount of force used, and (3) the extent of injury inflicted.  *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002)).  Ultimately, the appropriate inquiry is

"whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying motivation.'" Id. Particularly important to this case is that force is analyzed only from the perspective of a reasonable officer on scene at the time the force was used, without consideration of extraneous factors, such as conjecture as to whether differing police tactics may have avoided the situation that led to the use of force.  *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004); *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002); *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004) (courts must not "view the matter as judges from the comfort and safety of our chambers...[but rather] must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009)(perspective is crucial, and the "only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded.").

Throughout discovery in this case, Plaintiff's attorneys and their expert have improperly slipped into the role of "Monday Morning Quarterback" in an effort to question certain tactics in hindsight.  This misplaced effort includes wild assumptions that the deputies could have approached McBean differently, reasoned with McBean, tackled McBean, tazed McBean, or continued to allow McBean to simply exhibit the rifle on his shoulders. These assumptions, of course, discount that the deputies' presence and countless

verbal commands already had failed and resulted in McBean remaining armed and pointing the weapon at the deputies. Moreover, binding Supreme Court precedent establishes that a plaintiff cannot "establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1777, 191 L. Ed. 2d 856 (2015); *Btesh v. City of Maitland, Fla.*, No. 6:10-CV-71-ORL-19DAB, 2011 WL 3269647, at *20 (M.D. Fla. July 29, 2011), aff'd sub nom. *Btesh v. City of Maitland, FL*, 471 F. App'x 883 (11th Cir. 2012) (same); see also *Ansley v. Heinrich*, 925 F.3d 1339, 1344 (11ᵗʰ Cir. 1991)(negligent conduct alone cannot form the basis of a section 1983 claim premised upon the Fourth Amendment).

In *Btesh,* supra, the Middle District was faced with resolving a similar challenge by a plaintiff seeking to avoid summary judgment in a deadly force case.   There, the plaintiff urged that **if** the officer had, for instance, interviewed a witness and transitioned to a Taser after the subject locked a door, then maybe the events would have unfolded differently. The court correctly noted that these factors do not support an actionable Fourth Amendment claim:

> [The expert's] testimony that [the officer] should have employed different police tactics or investigative techniques which *possibly* could have prevented the shooting of [the plaintiff] injects impermissible hindsight into the analysis and does not, by itself, permit a reasonable inference that [the officer's] use of force was objectively unreasonable under the circumstances at the moment she shot [the plaintiff].

Id. at *23. (emphasis in original).

The Middle District's opinion is instructive *sub judice*.   It is impossible to compare the *Btesh* facts and still conclude that Peraza's use of deadly force was in any way less justified than the Maitland officer's.   Quite to the contrary, because **McBean was armed with a weapon** and Btesh was not.

In *Btesh*, officers were dispatched to a residence and confronted with a 55-year-old schizophrenic. The responding officers were unaware prior to arrival that the plaintiff had a mental handicap but were told that he was crazy. Id. at *3. The plaintiff's caretaker advised the officers that she had been struck and revealed a bruise on her forehead. Id. at *6. Two officers entered with guns drawn, before even making contact.   Once the officers were inside, the plaintiff flung his bedroom door open and appeared in the doorway "with his hands closed together near his chest," but with no observable weapon. Id. at *7. The plaintiff yelled at the officers and ordered them out of his home, while appearing agitated, aggravated, and upset. Id. The officers gave verbal commands to the plaintiff to stop. Id. The plaintiff ignored the commands and shut the front door, locking the first officer outside.   Id. The plaintiff returned from his front door and quickly walked toward the second officer with his hands closed together, with no weapon (much unlike McBean, who had a rifle on his shoulders). Id. at *8. As the plaintiff approached, the officer shot the plaintiff multiple times.   Id.

In assessing the force, the court noted that officers face no less danger simply because a suspect's resistance is secondary to mental illness instead of criminal intent.

Indeed, Btesh's expert conceded that officers face **greater danger** when confronted with a violent, mentally unstable suspect as compared to a violent but stable suspect who comprehends the officer's commands.   Id. at *13.[1] So the *Btesh* court, rather than considering impertinent factors such as the suspect's subjective excuses for violence, properly focused on the subject's objective presentation, aggression, and disobedience as witnessed by the deputies:

> [The plaintiff's] failure to obey the commands of [the officers] objectively indicated that [the plaintiff] had dangerous propensities.  Prior to entering [the plaintiff's] apartment, [the officers] gave two verbal commands for the suspected assailant to come out of the apartment, and there was no response. When [the plaintiff] first appeared to Officer Denicola inside the apartment, he failed to comply with Officer Denicola's request to stop and show his hands. [The plaintiff] also failed to comply with Officer Payne's instructions to stop as he aggressively walked toward the front door. After locking Officer Payne outside the apartment, [the plaintiff] again failed to comply with Officer Denicola's command to stop and show his hands as he aggressively approached Officer Denicola. The danger presented by [the plaintiff's] failure to obey commands was enhanced by the fact that the commands were given while Officers Denicola and Payne had their guns drawn upon [the plaintiff].

Id. at *20.   (internal citations omitted).

As in *Btesh*, the officers here gave McBean multiple opportunities to drop his rifle and surrender.  But McBean refused, did not go prone, remained armed, and aimed the weapon at the officers. When violent propensities and failure to obey commands are coupled with strong resistance, deadly force may be used without additional warning. Id.

---

[1] Suffice it to say that there is no support for the notion that officers must downgrade their use of force in self-defense of a mentally ill suspect. Any such notion would contravene *Graham*.

at *21. Simply put, the law does not require officers in a tense and dangerous situation to wait until the suspect actually **uses** a deadly weapon to act to stop the suspect. *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007); *Jean-Baptiste v. Guitierrez*, 627 F.3d 816 (11th Cir. 2010)(officers not required to "wait and hope [] for the best.")(citing *Scott v. Harris*, 550 U.S. 372, 381, 385, 127 S.Ct. 1769, 1778 (2007)).

In *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234 (11th Cir. 2003), the Eleventh Circuit affirmed the court's grant of summary judgment in a deadly force situation. In that case, a police officer encountered a man he knew to be mentally disturbed, who possessed a stick (a weapon certainly less dangerous than McBean's air rifle). According to the plaintiff, deadly force was not reasonable because he complied and lifted his hands in submission. The officer, though, interpreted the plaintiff's movement as raising the stick, fired a deliberate shot, and then another. Despite the plaintiff's subjective denial that he posed a threat to the officer, the officer still had reason to believe the plaintiff was violent, and that, coupled with the ineffectiveness of a lower use of less-than-deadly force (pepper spray), justified the use of deadly force. "[The plaintiff's] subjective perceptions have little bearing on how a reasonable officer in [the officer's] position would have perceived [the plaintiff] as a threat." Id. at 1246; see also *Pace v. Capobianco*, 283 F.3d 1275, 1281 (11th Cir. 2002)(deadly force against a suspect that was attempting to flee after committing a violent felony was reasonable).

Finally, in *Martinez v. City of Pembroke Pines*, 648 Fed. Appx. 888 (11ᵗʰ Cir. 2016), the Eleventh Circuit affirmed summary judgment in favor of a police officer who used deadly force against a mentally ill individual that was armed with a handcuff (far less deadly than a rifle). The Eleventh Circuit noted that an officer is not constitutionally required to wait until the moment a suspect uses a deadly weapon to stop the suspect. Id. at 894.

*Sub judice*, the record establishes that the deputies saw McBean holding what appeared to be a real rifle; the deputies repeatedly yelled commands at McBean to "stop," "police," "drop the weapon;" the commands were extremely loud; McBean did not drop the weapon; the level of perceived risk increased as McBean disregarded the deputies' clear verbal commands to stop and drop his weapon, and that McBean ultimately pointed the weapon toward the deputies.  Facts, ¶¶ 45-58.  At that time, Peraza fired. Facts, ¶ 58. Again, as in *Long* and *Martinez*, Peraza was not required to wait any longer to resort to deadly force. Based upon the totality of facts, vantage point, and circumstances known to Peraza, that decision was reasonable.[2]   Peraza is entitled to judgment.

---

[2] The analysis in this section addressing the Fourth Amendment claim applies equally to the common law battery (excessive force) claim against Peraza since an officer cannot commit a common law battery while utilizing objectively reasonable force. *City of Miami v. Sanders*, 672 So.2d 46, 48 (Fla. 3d DCA 1996).

**B.**     **Qualified immunity and Peraza– *at least* arguable probable cause to use deadly force**

The defense of qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730 (2002). The purpose is to "allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 248 F. 3d 1188, 1194 (11th Cir. 2002). **Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation."** *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003) (emphasis added). In the Eleventh Circuit, qualified immunity is the rule rather than the exception. *Lassiter v. Alabama A&M Univ.*, 28 F. 3d 1146 (11th Cir. 1994) (*en banc*).

The Supreme Court's two-part test to determine the application of qualified immunity is set forth in *Saucier v. Katz*, 121 S. Ct. 2151 (2001). While the test can be done in any order, the Court must determine whether Plaintiff's allegations, taken as true, establish a constitutional violation. If the Court finds that the allegations demonstrate constitutionally impermissible conduct, the next question is to determine whether the state actor's conduct "violated clearly established statutory or constitutional rights of which a reasonable person should have known." *Id*. The second inquiry is purely objective and turns upon whether the official could reasonably have believed his or her conduct to be

12

lawful in view of clearly established law, and the information possessed by the official at the time the conduct occurred. *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738; *Hardin v. Hayes*, 957 F. 2d 845, 848 (11th Cir. 1992).

> A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*D.H., a minor, etc. v. Clayton County School District*, 830 F.3d 1306, 1318 (11th Cir. 2016), citing *Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015).

In deadly force cases, an officer is entitled to qualified immunity not just when a reasonable officer would believe that deadly force was justified, but if he "reasonably **could** have believed that probable cause existed, in light of the information possessed" to use such force, even if that belief was mistaken. *Garczysnki*, 573 F.3d at 1167 (emphasis added). Existing precedent must establish to a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the officer was doing would be clearly unlawful given the circumstances. *Pace*, 283 F.3d at 1282. Importantly, the "preexisting law must give real notice of practical value to government officials, considering the specific circumstances confronting them, and not just talk of some generalized, abstract intellectual concept" since officials are not "obligated to be creative or imaginative in drawing analogies from previously decided cases." *Adams v. St. Lucie County Sheriff's Dep't*, 962 F.2d 1563, 1571 (11th Cir. 1992). "Unless the government

agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Pace*, 283 F.3d at 1282.

*Sub judice*, there can be no doubt that Peraza is entitled to qualified immunity. After Peraza was "indicted after shooting [McBean] who: (1) was walking down the street with an air rifle which appeared to be a firearm; (2) failed to obey officers' commands to drop the weapon; and (3) pointed the weapon towards officers before being shot," Peraza asserted that he was "entitled to immunity from prosecution under sections 776.012(1) and 776.032(1), Florida Statutes (2013), more commonly known as Florida's "Stand Your Ground" law." *State v. Peraza*, 226 So. 3d 937, 939 (Fla. Dist. Ct. App. 2017), review granted, No. SC17 1978, 2018 WL 2073456 (Fla. Feb. 1, 2018), and approved, 259 So. 3d 728 (Fla. 2018).

The trial court conducted a six-day evidentiary hearing. Id. During the hearing, the court heard from 31 defense witnesses, including six witnesses tendered as experts, along with five state witnesses. Id. The trial court further examined numerous exhibits including 911 recordings, police dispatch recordings, several dozen photographs, the air rifle, a .22 caliber rifle, and other items and demonstrative aids. Id. The court also conducted a view of the scene. Id. Following the hearing, the circuit court issued a 36 page order including findings of fact and conclusions of law which determined that "[Peraza's] application of deadly force in the instant case was **objectively reasonable**." See <u>App. L.</u>, p. 34. (emphasis

added).

The State appealed to the Fourth District Court of Appeal.  The appellate court

confirmed Peraza's entitlement to Stand Your Ground immunity:

> We conclude the circuit court's findings of fact are supported by competent substantial evidence. The record supports the circuit court's finding that the officer's account of the incident was consistent with the other credible witnesses' testimony and the physical evidence. The record also supports the circuit court's finding that the man ignored repeated warnings to stop and drop the weapon, turned towards the officers, and pointed his weapon at the officers, causing the officer to be in fear for his life and the lives of others, prompting the officer to shoot at the man, resulting in the man's death.

*State v. Peraza*, 226 So. 3d 937, 946 (Fla. Dist. Ct. App. 2017), approved, 259 So. 3d 728

(Fla. 2018) (emphasis added).

The Florida Supreme Court accepted the matter for discretionary review and

likewise determined that Peraza properly had been granted the defense:

> [W]e resolve the certified conflict and answer the certified question by holding that law enforcement officers are eligible to assert Stand Your Ground immunity, even when the use of force occurred in the course of making a lawful arrest. Based upon the trial court's findings of fact, Deputy Peraza is entitled to that immunity and is therefore immune from criminal prosecution.

*State v. Peraza*, 259 So. 3d 728, 733 (Fla. 2018).

Under federal law, police officers only need to possess "arguable probable cause"

to believe that a suspect poses a threat of physical injury to an officer or others.   *St. George*

*v. Pinellas County*, 285 F. 3d. 1334, 1337 (11th Cir. 2002).   As discussed above, Florida

courts have already determined that Peraza possessed significantly more than that.

Consequently, Peraza is entitled to qualified immunity and, accordingly, to judgment as to Count I.   See also *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015) (Supreme Court stressed that qualified immunity cases require an intensive look at the facts, and that an officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable officer in [his] shoes would have understood that he was violating it" and that "existing precedent...placed the statutory or constitutional question beyond debate.").

### C.   <u>Peraza's use of deadly force was lawful under state law</u>

Under Florida law, "a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is **clearly excessive***.*" *City of Miami v. Sanders*, 672 So.2d 46, 48 (Fla. 3d DCA 1996)(emphasis added).   Under §776.05, Fla. Stat., an officer "need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest" and may use any force, including deadly force, which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest." *Terrell v. Smith*, 668 F.3d 1244, 1252 (11th Cir. 2012) (officer need not retreat under Florida law). Importantly, the bodily harm need not even be serious bodily, or potentially deadly, but merely a reasonable belief that the force is in self-defense of bodily harm. Id.

Absent proof that McBean dropped the rifle, surrendered, complied with verbal commands, and allowed the deputies to secure him (and there is no such proof whatsoever)

McBean remained a threat.   In fact, as discussed above, the Florida appellate court specifically reviewed the evidence surrounding Peraza's use of force and determined that McBean "ignored repeated warnings to stop and drop the weapon, turned towards the officers, and pointed his weapon at the officers, causing the officer to be in fear for his life and the lives of others, prompting the officer to shoot at the man, resulting in the man's death."   Accordingly, pursuant to §776.05 and §776.06, Fla. Stat., Peraza was well within his right under state law to use deadly force.   Because Peraza's decision to use deadly force was reasonable, and not clearly excessive, Peraza is entitled to judgment on Count XI.   *Sanders*, supra.

### D.    **Plaintiff's common law claims are barred by Fla. Stat. §776.085.**

Florida Statute §776.085 provides:

> It shall be a defense to any action for damages for personal injury or wrongful death. . . that such action arose from injury sustained by a participant during the commission or attempted commission of a forcible felony. . . The defense authorized by this section shall be established by evidence that the participant has been convicted or such forcible felony or attempted forcible felony, or by proof of commission of such crime or attempted crime by a preponderance of the evidence.

Forcible felony, as defined by Florida law, includes aggravated assault, aggravated battery and "any other felony which involves the use or threat of physical force or violence against any individual." §776.08, Fla. Stat. (2013). The undisputed record establishes, by a preponderance of the evidence according to Florida's Fourth District Court of Appeal, that McBean committed an aggravated assault when he brandished the rifle and violently

resisted police with a deadly weapon in hand.  This created a well-founded fear that violence was imminent.   See §§784.011, 784.021, 843.01, Florida Statutes; *Miller v. State*, 636 So.2d 144, 151 (Fla. 1st DCA 1994) (per curiam) (engaging in a scuffle with officer during a detention, even an improper one, constitutes battery on a law enforcement officer).

Based upon a preponderance of the evidence, McBean committed actions which bar Plaintiff's common law claim as a matter of law.   Peraza is entitled to judgment. *Fernandez v. City of Cooper City*, 207 F.Supp.2d 1371, 1381-82 (S.D. Fla. 2002) (granting summary judgment based upon §776.085, Fla. Stat.)

### E.     Statutory immunity bars claim against Peraza

*Instanter*, the complaint sues Peraza in his individual capacity for conduct within the course and scope of his employment as a BSO deputy. (DE 133, ¶ 9).  The claim against Peraza thus is governed by §768.28, Florida Statutes, Florida's Waiver of sovereign immunity in tort actions.   In pertinent part, the statute mandates that:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§768.28(9)(a), Fla. Stat.

*Sub judice,* there is no issue as to whether Peraza acted within the scope of his employment as a BSO deputy.   Plaintiff affirmatively alleges that he did. (DE 133, ¶ 9).

This Court's singular focus, then, is whether Peraza acted in bad faith, with malice, or in wanton and willful disregard of McBean's rights and safety.

Resolution of the issue of whether "the employee acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard... turns on a question of law." *Keck v. Eminisor*, 104 So.3d 359, 361 (Fla. 2012).   "[T]he trial judge must act as a gatekeeper in these circumstances, and should terminate civil proceedings when the immunity applies." *Willingham v. City of Orlando*, 929 So.2d 43, 48 (Fla. 5th DCA 2006).

"The phrase 'bad faith,' as used in section 768.28(9)(a), has been 'equated with the actual malice standard.'"   *Peterson v. Pollack*, No. 4D19-431, 2020 WL 698703, at *6 (Fla. 4th DCA 2020), quoting *Parker v. State Board of Regents, etc.*, 724 So.2d 163, 167 (Fla. 1st DCA 1998).   "The phrase 'malicious purpose,' as used in section 768.28(9)(a), has been interpreted as meaning the conduct was committed with "ill will, hatred, spite, [or] an evil intent.'"   Id., quoting *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017) (citation and internal quotation marks omitted).   "Or perhaps stated more simply, 'the subjective intent to do wrong.'" Id.

"The phrase 'wanton and willful disregard of human rights [or] safety,' as used in section 768.28(9)(a), has been interpreted as "conduct much more reprehensible and unacceptable than mere intentional conduct,'" Id., quoting *Richardson v. City of Pompano Beach,* 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987), and "conduct that is worse than gross negligence."   Id., quoting *Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 593

19

(Fla. 2d DCA 2003). The Fourth District looked to criminal jury instructions and further defined "wanton" as "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property," and "willful" as "intentionally, knowingly and purposely."   Id.

With those definitions in mind, the Fourth District Court of Appeal's decision to affirm the grant of immunity to Peraza is instructive.   The Fourth District analyzed the testimony of 36 different witnesses, including six experts, reviewed all of the evidence, consisting of 911 recordings, police dispatch recordings, several dozen photographs, the air rifle, a .22 caliber rifle, and other items and demonstrative aids, and conducted a view of the scene, *State v. Peraza*, 226 So. 3d at 939, and determined that the record properly supported a finding that Peraza was immune from prosecution under Florida's Stand Your Ground law.

*Instanter,* Florida's sovereign immunity statute compels the same result. While Plaintiff's complaint contains gratuitous, conclusory allegations of willful and wanton conduct, see DE 133 at ¶¶ 52, 171, the record does not support that allegation.   Peraza is entitled to the immunity afforded him by Florida's sovereign immunity statute. §768.28(9)(a), Fla. Stat.

WHEREFORE, Defendant, Peter Peraza, respectfully requests that this Honorable Court enter an order granting summary judgment in his favor and enter final judgment accordingly.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 24th day of July, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

> JOHNSON, ANSELMO, MURDOCH,
> BURKE, PIPER & HOCHMAN, P.A.
> ***Attorneys for Defendant Peraza***
> 2455 East Sunrise Boulevard, Suite 1000
> Fort Lauderdale, Florida 33304
> Telephone.: (954) 463-0100
> Facsimile.: (954) 463-2444
>
> *s/Christopher J. Stearns*
> MICHAEL R. PIPER
> Florida Bar No.: 710105
> CHRISTOPHER J. STEARNS
> Florida Bar No.: 557870

21

## SERVICE LIST

| *Counsel for Plaintiff – Pro Hac Vice:* | *Counsel for Plaintiff:* |
|---|---|
| **David I. Schoen, Esquire** <br> 2800 Zelda Road, Suite 100-6 <br> Montgomery, Alabama 36106 <br> Telephone:   (334) 395-6611 <br> dschoen593@aol.com | **Eric Bluestein, Esquire** <br> Dolan Dobrinsky Rosenblum Bluestein LLP <br> 2665 S. Bayshore Drive, Suite 603 <br> Miami, Florida 33133 <br> Telephone:    (305) 371-2692 <br> Facsimile:     (305) 371-2691 <br> ebluestein@DDRLawyers.com <br> Jcoss@DDRLawyers.com |
| *Counsel for Brad Ostroff, Richard Lacera, & Gregory Tony, in his official capacity as Sheriff of Broward County* <br><br> **Kenneth J. Miller, Esquire** <br> Haliczer Pettis & Schwamm, P.A. <br> One Financial Plaza, Seventh Floor <br> 100 SE 3rd Avenue <br> Fort Lauderdale, FL 33394 <br> Telephone: (954) 523-9922 <br> Facsimile: (954) 522-2512 <br> Service@hpslegal.com <br> kmiller@hpslegal.com | *Counsel for Peter Peraza* <br><br> **Michael R. Piper, Esquire** <br> **Christopher J. Stearns, Esquire** <br> Johnson, Anselmo, Murdoch, Burke, <br> Piper & Hochman, P.A. <br> 2455 East Sunrise Boulevard, Suite 1000 <br> Fort Lauderdale, Florida 33304 <br> Telephone.:   (954) 463-0100 <br> Facsimile.:    (954) 463-2444 <br> piper@jambg.com <br> stearns@jambg.com |